IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2018 Session

## GREGORY WEBSTER ET AL. EX REL SHAKIA WEBSTER v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 15C1587      Kelvin D. Jones, Judge**

_____

### No. M2018-00106-COA-R3-CV

_____

The parents of a kindergartener filed suit against a metropolitan government for negligence after their child injured her arm at school.  The trial court granted the metropolitan government's motion for summary judgment based upon its finding that the plaintiffs failed to demonstrate that the metropolitan government breached a duty of care owed to the plaintiffs or that any action or inaction by a metropolitan government employee was the cause in fact or proximate cause of the child's injuries.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Gary Dean Copas, Nashville, Tennessee, for the appellants, Gregory Webster, Suzette Webster, and Shakia E. Webster.

Patrick John Bradley and James Earl Robinson, Nashville, Tennessee, for the appellees, Metropolitan Government of Nashville and Davidson County and Metropolitan Nashville Board of Public Education.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

The parents of a minor child, Shakia Webster, filed this lawsuit on April 23, 2015, against the Metropolitan Government of Nashville and Davidson County[1] ("Metro")

---

[1] The complaint originally named Connie Martin, Shakia's teacher, as a defendant, but the plaintiffs voluntarily nonsuited Ms. Martin from the case in September 2015, and she is not involved in this appeal.

under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. §§ 29-20-101–408, alleging that Shakia suffered injuries as a result of the defendant's negligence. While a kindergarten student at Old Center Elementary, part of the Metro Nashville Public School System, Shakia sustained an injury to her right arm at school on April 23, 2014. Shakia, who is autistic, was six years old at the time of the incident.

The plaintiffs filed an amendment to their original complaint in August 2015. Then, in November 2015, the trial court allowed the plaintiffs to file a restated and amended complaint, which fleshed out their factual allegations and added theories of recovery for negligence, including bailment. The restated and amended complaint contains the following pertinent factual allegations:

10. The PLAINTIFF's forearm fracture of both the radius and the ulna bones of the right forearm occurred after the PLAINTIFF was left by her mother at the School on the morning of April 23, 2015.
11. After the lunch period on April 23, 2015, the TEACHER took her class outside to the School's playground.
12. There was no event which occurred on the playground which would cause a fracture of the radius and the ulna bones of the right forearm.
13. There was no event which occurred during lunch time which would cause a fracture of the radius and the ulna bones of the right forearm.
14. The fracture of the radius and the ulna bones of the right forearm occurred during the time that the PLAINTIFF was in the care and supervision of the TEACHER in the classroom.
15. The first crying of distress of the Plaintiff heard in the School by personnel occurred after the class returned from the playground and just prior to the delivery of the PLAINTIFF to the School office.
16. Immediately after hearing the PLAINTIFF's cries, the School personnel observed the PLAINTIFF under the teacher's desk.
17. The TEACHER was in the presence and control of the desk at the time the School personnel made the observation.
18. After the School personnel observation, the TEACHER delivered the PLAINTIFF to the School office.
19. The PLAINTIFF, six (6) years of age, would have voiced by crying or other resonating vocal expressions from her pain at the time of the occurrence of the fracture.
20. The PLAINTIFF due to her autism requires speech therapy and is now, and was on April 23, 2015, unable to communicate the cause of her injury.

The complaint alleged a cause of action for negligence and inferred the most probable explanation based on the circumstantial evidence to be "that the PLAINTIFF's injury occurred at the desk of the TEACHER while in her exclusive care and control of the

PLAINTIFF and of the desk area and was caused by the negligent acts and omissions of the TEACHER." The plaintiff also put forth bailment and res ipsa loquitur as theories supporting the defendant's liability.

On March 15, 2016, Metro filed a motion for partial judgment on the pleadings, arguing that the plaintiffs' bailment claim failed as a matter of law. In an order entered on April 15, 2016, the trial court granted Metro's motion, ruling that the plaintiffs' could not rely on the presumption of negligence provided by Tenn. Code Ann. § 24-5-111.

On September 22, 2017, after all discovery had been completed, the plaintiffs filed a motion for leave to amend the restated and amended complaint by pleading in the alternative under a count II. This count II contains allegations that Shakia's injuries occurred on the playground and that Metro was negligent in allowing her on the playground and in failing to provide appropriate supervision. The trial court denied the plaintiffs' motion to amend on October 13, 2017.

Pursuant to the trial court's September 19, 2017 scheduling order, the deadline to file dispositive motions was October 2, 2017. Metro filed a motion for summary judgment on October 2, 2017. After a hearing on December 1, 2017, the trial court granted Metro's motion for summary judgment in an order entered on December 15, 2017. The trial court found that, "Plaintiffs cannot demonstrate that an employee of the Metropolitan Government breached a duty of care owed to Plaintiffs." The court further found that the plaintiffs failed to prove cause in fact or proximate cause.

On appeal, the plaintiffs raise the following issues:

1. Whether the trial court erred in denying the plaintiffs' motion for leave to amend their pleadings by adding allegations after the deposition of their medical expert.

2. Whether the trial court erred in denying the plaintiffs' credibility objection to the declaration of Shakia's teacher as grounds for denying Metro's motion for summary judgment.

3. Whether the trial court erred in failing to comply with Tenn. R. Civ. P. 56.04 in the entry of judgment.

4. Whether the trial court erred in granting the defendants' motion for summary judgment.[2]

---

[2] A fifth issue, included in the plaintiffs' appellate brief, concerned whether the trial court erred in granting partial judgment on the pleadings to Metro regarding the plaintiffs' claim under the bailment theory. The plaintiffs abandoned this argument at oral argument.

ANALYSIS

(1)

The plaintiffs' first argument is that the trial court erred in denying their motion for leave to amend their complaint filed on September 22, 2017, to add allegations based upon the deposition of their medical expert taken on September 5.

A trial court's decision on a motion to amend a pleading under Tenn. R. Civ. P. 15 is reviewed under an abuse of discretion standard. *Conley v. Life Care Ctrs. of Am., Inc.*, 236 S.W.3d 713, 723 (Tenn. Ct. App. 2007); *Fann v. City of Fairview, Tenn.*, 905 S.W.2d 167, 175 (Tenn. Ct. App. 1994). There has been an abuse of discretion "when the trial court reaches a decision against logic that causes a harm to the complaining party or when the trial court applies an incorrect legal standard." *Riley v. Whybrew*, 185 S.W.3d 393, 399 (Tenn. Ct. App. 2005) (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). The trial court's decision "'will be upheld so long as reasonable minds can disagree as to the propriety of the [trial court's] decision.'" *Id.* (quoting *State v. Scott*, 33 S.W.3d 746, 751 (Tenn. 2000)). A trial court has discretion to grant or deny a moving party's motion to amend a pleading, but if a motion to amend is denied, the trial court is required to give a "reasoned explanation" for its denial. *Cumulus Broad., Inc. v. Shim,* 226 S.W.3d 366, 374 (Tenn. 2007).

Tennessee Rule of Civil Procedure 15.01 provides that leave of court to amend pleadings "shall be freely given when justice so requires." The Tennessee Supreme Court has recognized that the language of Tenn. R. Civ. P. 15.01 "substantially lessens the exercise of pre-trial discretion on the part of a trial judge." *Branch v. Warren*, 527 S.W.2d 89, 91 (Tenn. 1975); *see also Hardcastle v. Harris,* 170 S.W.3d 67, 80-81 (Tenn. Ct. App. 2004). Rule 15.01 does not, however, provide that leave to amend "shall be given," only that it "shall be freely given" when justice requires it. *See Waters v. Coker,* No. M2007-01867-COA-RM-CV, 2008 WL 4072104, at *4 (Tenn. Ct. App. Aug. 28, 2008). Once a responsive pleading has been filed, a party is entitled to amend a pleading only with the adverse party's consent or with leave of court, which is within the trial court's discretion to grant or deny. TENN. R. CIV. P. 15.01; *Waters*, 2008 WL 4072104, at *4. In ruling on a motion to amend a complaint, a trial court should consider several factors, including: "1) undue delay in filing, 2) lack of notice to the opposing party, 3) bad faith by the moving party, 4) repeated failure to cure deficiencies by previous amendments, 5) undue prejudice to the opposing party, and 6) futility of amendment." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 42 (Tenn. Ct. App. 2006) (citations omitted).

In their proposed amendment to the restated and amended complaint, the plaintiffs sought to include the following pertinent provisions:

28. The Plaintiffs' expert, Dr. Stephen Neely, an orthopaedic surgeon, testified under oath by deposition taken on September 5, 2017, that he could not to a reasonable degree of medical certainty state that the fracture did not occur on the playground.

29. Dr. Neely suggested in such deposition that the PLAINTIFF could have jerked over and hit the side of the curved slide producing the injury.

30. Dr. Neely testified under oath in such deposition that he had no explanation for the fracture based on the playground experience that day.

31. Dr. Neely testified under oath in such deposition that a significant force produced the fracture.

32. Dr. Neely testified under oath in such deposition that the PLAINTIFF was a very slight child, weighed 43 pounds, and her bones were not very large; and that a[n] 80 or 90-pound child of the same age might have considerably stouter bones that would not fracture as easily.

. . . .

37. The PLAINTIFF immediately went to the steps to the tube slide and never occupied any other space on the playground facility other than the steps, the walk-way to the tube slide and the tube slide.

38. The PLAINTIFF never fell in the playground.

. . . .

42. On April 23, 2014, the TEACHER knew or should have known that the PLAINTIFF did not demonstrate the ability to follow safety rules.

43. The PLAINTIFF's IEP [Individual Education Plan] showed that the PLAINTIFF was going through language therapy due to a receptive and expressive language impairment. . . .

. . . .

46. Notwithstanding the PLAINTIFF's inability to comply with safety rules, the TEACHER allowed the PLAINTIFF to enter the playground facility and slide down the tube slide.

47. The TEACHER observed the PLAINTIFF getting on the slide and sliding down the slide on her side and that she never fell off the slide at any time. . . .

48. The TEACHER observed the PLAINTIFF sliding down the slide in an improper manner. . . .

. . . .

52. In that the PLAINTIFF was unable to follow safety rules; in that the PLAINTIFF was unable to immediately comply with any directive to correct any sliding in an improper manner; and in that the IEP required planned arrangements for the PLAINTIFF during recess with a reduction and minimization of distractions, a reasonable and prudent person would exercise care to not permit the PLAINTIFF to enter the playground facility and in any event to not permit the PLAINTIFF to enter alone without an adult escort.

In its order entered on October 13, 2017, denying the plaintiffs' motion to amend, the trial court reasoned as follows:

> Plaintiffs have already amended their Complaint three times and each time did not include the allegations they now seek to add. This case is two and a half years old, and Plaintiffs have engaged in undue delay in seeking this amendment because the facts and theory they seek to add have been known to them since the beginning of litigation. Additionally, the Metropolitan Government has filed [a motion for] summary judgment in this case, and it would be unduly prejudicial to Metro if the Complaint were amended for a fourth time. *See Hardcastle v. Harris*, 170 S.W.3d 67, 81 (Tenn. Ct. App. 2004) (stating that some circumstances that could warrant denying a motion to amend a pleading include: (1) undue delay in seeking the amendment; (2) repeated failure by the moving party to cure deficiencies in earlier amendments; (3) and undue prejudice to the opposing party).

We find no abuse of discretion in the trial court's decision to deny the plaintiffs' motion to amend. The court's decision is well-supported by the relevant factors. The plaintiffs exhibited undue delay in seeking to amend their complaint to reflect the theory that Shakia was injured on the playground. Contrary to the plaintiffs' argument on appeal, Dr. Neely's deposition was not the first evidence they had that Shakia's injury may have occurred on the playground. In the deposition of Shakia's teacher Connie Martin, taken on August 6, 2015, Ms. Martin testified that she noticed that Shakia had a "funny look on her face" after she went down the slide, so Ms. Martin went over to check on her. According to Ms. Martin, Shakia demonstrated to the teacher that she turned her arm on the slide. Shakia's mother also testified in her deposition that she told hospital staff on the day of the accident that Shakia may have hurt her arm going down the slide during recess. Further, Metro stated in its discovery responses that Shakia's injuries may have occurred on the slide.

Despite amending their complaint several times during the proceedings, the plaintiffs failed to include allegations concerning the playground in their previous amendments. At the time when the plaintiffs filed the motion to amend at issue here, all discovery was complete and the deadline for dispositive motions was ten days away. Thus, Metro was required to file its motion for summary judgment prior to the disposition of the plaintiffs' motion to amend. Under all of these circumstances, the plaintiffs' motion to amend was prejudicial to Metro, and the trial court did not abuse it discretion in denying it. *See Allen v. Saturn Corp.*, No. M2002-01238-COA-R3-CV, 2003 WL 22055959, at *2 (Tenn. Ct. App. Sept. 4, 2003).[3]

---

[3] Metro further asserts that, because Shakia's mother testified that the child was allowed to use the slide at school and that her IEP did not restrict her use of the playground equipment, the plaintiffs exhibited bad faith in attempting to amend their pleadings based upon a conflicting theory of liability. We need not

The remaining three issues relate to the trial court's decision to grant summary judgment in favor of Metro.

Whether a party is entitled to summary judgment is a matter of law, which means that we review the trial court's judgment de novo, according it no presumption of correctness. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. A moving party who does not bear the burden of proof at trial "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, or responses to interrogatories that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. When the moving party fails to make the required showing, however, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin*, 271 S.W.3d at 83 (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

In determining whether a party is entitled to summary judgment, we must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 84 (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Id.* (citing *McCarley*, 960 S.W.2d at 588). A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Id.* (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

The plaintiffs' next argument is that the trial court erred in denying their credibility objection to the declaration of Shakia's teacher as grounds for denying Metro's motion for summary judgment. As part of the documentation in support of its

address this argument as the trial court's reasoning amply supports its denial of the motion to amend.

motion for summary judgment, Metro submitted a "Declaration of Connie Martin" pursuant to Tenn. R. Civ. P. 72[4] on October 2, 2017. In her declaration, Ms. Martin described the events of April 23, 2014. Her declaration states, in pertinent part:

12. Between January 2014 and April 23, 2014, Shakia was on the playground numerous times for recess.

13. I never once saw her go down the slide inappropriately before April 23, 2014.

14. Shakia did not have a problem following the rules regarding the playground.

15. On April 23, 2014, before taking my students to recess on the playground I went over the playground rules, including the rule about how to go down the slide.

16. On April 23, 2014, I observed Shakia get on the slide, turn around and speak to another student, turn back around, and slide down the slide on her side.

17. She was so quick that I had no time to correct her on proper playground rules before she slid down the slide.

18. I did not see any traumatic event as she went down the slide.

19. I could only see her from her back as she went down the slide and I was not close enough to stop her from sliding down the slide.
. . . .

24. Between January 2014 and April 23, 2014, Ms. Webster never told me Shakia was not to be allowed on the playground equipment.[5]

On November 29, 2017, the plaintiffs filed a motion objecting to Ms. Martin's declaration. On appeal, the plaintiffs point to alleged contradictions in Ms. Martin's testimony. We find no such contradictions.

As the Tennessee Supreme Court recognized in *Bowman v. Henard*, 547 S.W.2d 527, 529-30 (Tenn. 1977), there are cases where a party should not be forced to try his or her case based upon affidavits because doing so would deprive the trier of fact of the

---

[4] Tennessee Rule of Civil Procedure 72 states:

Whenever these rules require or permit an affidavit or sworn declaration, an unsworn declaration made under penalty of perjury may be filed in lieu of an affidavit or sworn declaration. Such declaration must be signed and dated by the declarant and must state in substantially the following form: "I declare (certify, verify or state) under penalty of perjury that the foregoing is true and correct."

[5] Because the trial court did not rule upon the plaintiffs' motion to amend their complaint until after Metro filed its motion for summary judgment, Metro had to address the allegations contained in count II of the plaintiffs' proposed amendments (in order to comply with the deadline for dispositive motions). Thus, Ms. Martin's declaration addresses the plaintiffs' theory that Shakia was injured on the playground.

opportunity to evaluate the credibility of the witnesses. In particular, our courts have stated that summary judgment is not proper where the outcome of a case hinges upon the credibility of witnesses. *Knapp v. Holiday Inns, Inc.*, 682 S.W.2d 936, 943 (Tenn. Ct. App. 1984). The court in *Hepp v. Joe B'S, Inc.*, No. 01A01-9604-CV-00183, 1997 WL 266839, at *3 (Tenn. Ct. App. May 21, 1997), stated as follows:

> The credibility concerns that warrant denying a summary judgment must raise to a level higher than normal credibility questions that arise whenever a witness testifies. Any other rule would essentially prevent the courts from granting a summary judgment in any case. Thus, this court has found that credibility concerns preclude granting a summary judgment in cases where a witness's credibility has been specifically challenged, or where the record contained clear evidence of a witness's lack of credibility.

(citations omitted).

In *Dennis v. Donelson Corporate Centre I, LP*, No. M2015-01878-COA-R3-CV, 2016 WL 2931096, at *1 (Tenn. Ct. App. May 13, 2016), the plaintiff sued a building owner and an elevator maintenance company for injuries caused when she fell upon exiting the elevator. The plaintiff voluntarily dismissed two defendants, and the trial court granted summary judgment in favor of the remaining defendant. *Dennis*, 2016 WL 2931096, at *2. On appeal, the plaintiff argued that the trial court erred in granting summary judgment because there was a genuine issue of material fact as to the credibility of Jeff Rogers, the elevator maintenance employee, who "could not remember whether he serviced the elevator two days before or a month before [the plaintiff's] injuries." *Id.* at *4. This court disagreed, stating that the "challenge to Mr. Rogers's credibility does not go to the heart of the matter" and that "[w]hether the elevator was serviced a month before or two days before is not a material fact in this case." *Id.* The plaintiff alleged that Mr. Rogers's inability to remember the date suggested that he was "concealing damaging evidence." *Id.* The court found no evidence to support this argument and found Mr. Rogers's inability to remember to be "peripheral to the issue of whether the Appellee breached a duty owed to [the plaintiff], that caused the elevator to mislevel." *Id.* The court concluded that the credibility challenge did not rise to the "higher than normal" level necessary to prevent summary judgment. *Id.*

In the present case, there is no merit to the credibility issues raised by the plaintiffs. They cite a supposed contradiction between Ms. Martin's statement in her declaration that Shakia did not have a problem following rules regarding the playground with teacher observations in the child's IEP documents. Specifically, the plaintiffs point to an April 2014 IEP identifying a goal of demonstrating "increased compliance in the school environment with following directives . . . to complete classroom tasks and follow safety rules and daily routine as stated in each short term objective by April 2014." We find no inherent contradiction between Ms. Martin's statement and the IEP goal. Ms.

Martin's statement describes her observations regarding Shakia's behavior on the playground over the four-month period when Shakia was in her class. The IEP sets overall goals for Shakia in order to assist her in receiving an appropriate education.

In rejecting the plaintiffs' objection to Ms. Martin's credibility, the trial court stated: "The Court finds that Plaintiffs' challenge to Ms. Martin's credibility does not go to the heart of the matter and does not rise to the 'higher than normal' level required to preclude summary judgment." We agree with the trial court.

(3)

The plaintiffs' next argument is that the trial court erred in failing to comply with Tenn. R. Civ. P. 56.04 in its entry of judgment.

Tennessee Rule of Civil Procedure 56.04 states: "The trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling." The trial court entered an order on December 15, 2017, which includes findings of fact and conclusions of law. In its conclusions of law, the trial court found that, "Plaintiffs cannot demonstrate that an employee of the Metropolitan Government breached a duty of care owed to Plaintiffs." On the issue of causation, the court concluded that, "Plaintiffs have not presented any evidence that some action or inaction in the classroom on the part of a Metro employee was the cause in fact or proximate cause of the injury." The court granted summary judgment in favor of Metro because there were no genuine issues of material fact and Metro was entitled to judgment as a matter of law.

In asserting that the trial court failed to comply with Tenn. R. Civ. P. 56.04, the plaintiffs revert to their argument that the teacher should not have allowed Shakia to go down the tube slide because of the notations on her IEP regarding her difficulties with following safety rules. Because the trial court denied the plaintiffs' motion to amend their complaint to include the allegations regarding the playground, the only claims the court considered were those regarding the teacher's care and supervision in the classroom. We conclude that the trial court did not err by declining to address the plaintiffs' arguments relating to the playground.

(4)

The plaintiffs' final argument that the trial court erred in granting summary judgment is essentially a review of the two previous arguments. The plaintiffs again object to Ms. Martin's declaration and argue that the trial court failed to specifically address the foreseeable danger of allowing Shakia to use the slide in light of her limitations in following safety rules. We need not repeat our response to these arguments. We note, however, that, even if the trial court had allowed the plaintiffs to

amend their complaint to include the allegations regarding the playground, the plaintiffs failed to point to evidence demonstrating how Shakia injured her arm or how any precaution or supervision by Metro could have prevented the injury.

We find no error in the trial court's decision granting summary judgment in favor of Metro.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellants, Gregory and Suzette Webster, for which execution may issue if necessary.

 

_____

ANDY D. BENNETT, JUDGE